DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Gwen Gamblin, et al., | ) | |
| | ) | CASE NO. 5:11 CV 927 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| City of Akron, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is defendants' motion for summary judgment.  ECF 51.

Plaintiffs have opposed the motion (ECF 52), and defendants have replied (ECF 53).  For the

reasons contained herein, defendants' motion for summary judgment is GRANTED IN PART

and DENIED IN PART.

## I.  FACTUAL SUMMARY

The basic facts of this case are not in dispute, however, some important particular facts

are in dispute.  At one time, plaintiff Gwen Gamblin had permitted her grandson, Marvin Smith,

to live in her home on Noah Avenue in Akron, Ohio.  Before the events at issue in this case,

Gamblin determined that her grandson Smith was no longer welcome and she terminated his

permission to live with her.  Some of Smith's clothing remained in Gamblin's home.

On Sunday May 10, 2009, Gamblin and a friend, plaintiff Robert Hairston, went to

church and then to visit Gamblin's daughter, who also lived on Noah Avenue in Akron.  It was

Mother's Day.  Smith and his sister, Nicha Robinson, also went to the home of Gamblin's

daughter.  During the course of the day, Smith requested access to Gamblin's home to remove

his clothing.  Smith had been drinking and was behaving badly, and ultimately the police were

(5:11 CV 927)

called and Smith and his sister were asked to leave.  Gamblin denied Smith's requests during the

course of the day on May 10, 2009 to access her home.  After concluding their visit with

Gamblin's daughter, Gamblin and Hairston returned to Gamblin's home to relax and watch

television.

Smith kept calling Gamblin to access her home, but Gamblin refused and ultimately

ignored his telephone calls.  The night grew late and entered the early morning hours of May 11,

2009.  Smith's sister, Nicha Robinson, summoned the Akron Police to Gamblin's home

regarding Smith's access to the house.

Defendant Officers Miles and Belacic arrived at Gambin's house.  Officers Miles and

Belacic knocked on the door to Gamblin's home for approximately 10 minutes, but Gamblin

would not answer the door.  Miles's and Belacic's supervisor, Sergeant Micozzi, then arrived at

Gamblin's house.  Micozzi spoke with his subordinate officers and with Smith and Robinson.

Smith had a key, but his key would not open the door to Gamblin's house.   According to

Gamblin's deposition testimony, she spoke to the officers through an open second floor window

and told them that she was not opening the door to her home and wanted her grandson to leave.

Gamblin Depo. (ECF 51-1) pp. 58-59.

Nevertheless,  "[b]ased on the facts and information available . . . [Officer Micozzi]

determined that Smith resided at the home and had authority over the premises."  Micozzi Aff.

(ECF 51-5) par. 8.  According to his affidavit, Micozzi made this determination after speaking

with Smith and Robinson; there is no evidence in the record that Micozzi was provided with a

lease, utility bill, or any documentation to support Smith's claim in the early hours of May 11,

2

(5:11 CV 927)

2009 that he resided at Gamblin's home.

Having decided that Smith resided at Gamblin's home and had authority over the premises, Officer Micozzi "advised Smith of his lawful right to force entry into his residence." Micozzi Dec. (ECF 53-1) par. 8.  Further, Micozzi "explained to Smith the [officers] could not force entry into the home, but that we would stand by if he chose to do so."  Micozzi Aff. (ECF 51-5) par. 9.  Smith proceeded to kick open the door to Gamblin's home.  According to Smith's statement to the police afterwards, he was encouraged by the officers while doing so.[1]

Once the door to Gamblin's home was forcibly opened, "Officer Belacic told Smith to stand back while the Officers went in first to ensure Smith's safety."  Officer Micozzi "believed that Smith resided at the house and had authority over the premises, and therefore had authority to consent to the Officers entering the home."  Micozzi Aff. (ECF 51-5) par. 9.  Officers Miles and Belacic, and Sergeant Micozzi entered Gamblin's home.

At the time Gamblin's home was forcibly entered, Hairston and Gamblin were upstairs watching television.  According to Gamblin's deposition testimony, Gamblin kept a knife in her

---

[1] "Marvin Smith: They knocked on the door and she was in there, they heard her moving and they wouldn't open the door and they just kept knocking.

Sgt. Congrove: Ok, what happened after that?  Did you go to the side door?

Marvin Smith: Yes.

St. Congrove: What happened then?

Marvin Smith: Then they started knocking and I started kicking it and they said keep kicking it, kick it in."

Congrove Aff. (ECF 51-2) p. 5 of 6.

3

(5:11 CV 927)

upstairs bedroom.  She came downstairs with the knife in her hand to "threaten," but not harm, her grandson Smith whom she believed had entered her home.  Instead, she was confronted by the police.  Gamblin asked them for their warrant and instructed them to leave.

Officers Miles and Belacic drew their weapons and demanded Gamblin drop the knife. Gamblin's recollection of the events is that the officers took the knife from her.[2]  Further, Gamblin states that she advised the officers that she had an existing shoulder injury.  The officers instructed Gamblin to "shut up" and took the knife from her and "tussled me to my sofa, both arms behind my back and handcuffed me."  Gamblin Depo. (ECF 51-1), pp. 66-67 of 103. However in their affidavits, both Miles and Belacic state that Gamblin dropped the knife.  Miles Aff. (ECF 51-4) par. 9; Belacic Aff. (ECF 51-3) par. 8.  Gamblin was 61 years old at the time.

While Officers Miles and Belacic were engaged with Gamblin, her house guest, Hairston, came down the stairs.  Hairston was 67 years old at the time.

What happened next is in dispute.  Everyone agrees that Hairston was tasered, but they disagree as to where he was and what he was doing at the time.  Officer Belacic's affidavit states that Hairston "came down the steps from the second floor and attempted to pull Gamblin into the living room."  Belacic Aff. (ECF 51-3) par. 9.  According to Officer Miles, "Hairston came down the steps from the second floor and started to push Officer Belacic and me."  Miles Aff. (ECF 51-4) par. 10-11.

---

[2] Defendants counsel, while questioning Gamblin at her deposition, refers to the officers' police report of the incident, stating:   "-- at least one of the officers describe that he was able to grab your hand and get the knife out of your hand."  Gamblin Depo. (ECF   51-1),  p. 66.  The police report does not appear to be in the record.

(5:11 CV 927)

Hairston has a different version of events.  According to Hairston, he was tasered by Micozzi while he was still on the steps.  Hairston Depo. (ECF 51-6) p. 35 of 67.  As he came down the stairs and saw what was happening to Gamblin, he may have said that it was not necessary to treat her that way, but had no intention of getting involved in the altercation.  Hairston Depo. (ECF 51-6) pp. 36-37 of 67.

Hairston was tasered from a distance of five feet.  Micozzi did not say anything to Hairston before tasering him and Hairston had no indication he was about to be tasered.  Hairston Depo. (ECF 51-6) p. 37 of 67; Micozzi Aff. (ECF 51-5).  Micozzi stated that he deployed his taser because he did not know Hairston's intentions and it appeared to him Hairston was "grabbing at" the officers.  According to Micozzi, at the time he tasered Hairston, Gamblin had the knife in her hand.  Micozzi Aff. (ECF 51-5) par. 13-15.  After Hairston was tasered and Gamblin was handcuffed, Micozzi called for a supervisor and an EMS unit for Hairston.  Micozzi Aff. (ECF 51-5) par. 19.  After being tasered, Hairston required medical attention, including a stress test, cardiac test, and knee surgery.  Hairston Depo. (ECF 51-6) pp. 13-15 of 67.  Both Gamblin and Hairston were given summons for obstructing official business.  Micozzi Aff., ¶ 21.

At the end of these events, in the wee hours of the morning on May 11, 2009, after kicking open the door to Gamblin's home, "Smith was able to gather his clothing."  Gamblin and Hairston, who had been handcuffed and tasered, received summons for obstructing "official business."  Micozzi Aff. (ECF 51-5) par. 20-21.

5

(5:11 CV 927)

Sergeant Long arrived on the scene at the conclusion of these events.  Long Aff. (ECF51-7).  Sergeant Congrove, who was not present as the events unfolded, conducted an investigation and interviewed both Marvin Smith and Nicha Robinson "at the scene immediately following the incident."  Congrove Aff. (ECF 51-2) par. 5.  Congrove concluded from his investigation that any use of force by Micozzi, Miles and Belacic "did not violate any policy or procedure or rule or regulation of the Akron Police Department."  Congrove Aff. (ECF 51-2) par. 9.  Congrove's affidavit does not reflect that he conducted any investigation surrounding the role of Micozzi, Miles, and Belacic, if any, in the forcible entry of Gamblin's home.  The Akron Police Department's taser policy and procedure, or any relevant policies and procedures or training records, do not appear to be part of the record.

## II.  PROCEDURAL BACKGROUND

A.    <u>The Initial Complaint</u>

The initial complaint was filed on May 10, 2011, by plaintiffs Gwen Gamblin and Robert Hariston, Sr.  The defendants were listed as City of Akron, Division of Police and John Doe I, John Doe II and John Doe III.  The following facts were alleged in the original complaint:

> 6.    Defendant Officers had instructed, Marvin Smith, to forcibly kick open the front door of the Plaintiff "Gamblin's" home known as 364 Noah Avenue, Akron, Ohio 44320.
>
> 7.    After instructing Marvin Smith to forcibly breach the Front door Defendant, OFFICERS entered Plaintiff "Gamblin's" home without a search warrant or probable cause.  There was no emergency situation.
>
> 8.    When Defendants OFFICERS entered such property, Plaintiff "Gamblin" & "Hariston" were beaten and tased by Defendant OFFICERS.

6

(5:11 CV 927)

> 9.      Plaintiff "Gamblin" sustained injuries while being excessively handled and thrown to the ground, handcuffed and arrested.

> 10.     Plaintiff "Hariston" was tased by Defendant OFFICERS. He sustained injuries as well.

The original complaint does not allege a date when the above-described action took place.  However, paragraph 26 of the complaint alleged that "prior to May 11, 2009" the City developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in city which caused the violation Gamblin's and Hairston's rights.

On August 18, 2011, the Court issued the following order:

> The complaint in this case was filed on May 10, 2011.  The complaint suffers from several mistakes.  First, the complaint is not signed by counsel for the plaintiffs.  Second, the complaint names as the first defendant "City of Akron Division of Police." The Court notes that a judgment for the plaintiffs against the defendant "City of Akron Division of Police" would not be collectible.  The police department is not *sui juris*.

> Against that background, if counsel for the plaintiffs wishes to proceed with this action, he is granted leave until Friday, September 2, 2011 to file an amended complaint.  First, he should sign the complaint, and second, if counsel for the plaintiffs wishes to make the City of Akron a defendant, he should so designate on the title page of the complaint.

> Finally, the docket fails to reflect any service upon the defendants. Counsel has an obligation to perfect service and file the return with the clerk's office.  Until service is perfected, there will be no basis for the Court to proceed with this case.

> If counsel for the plaintiffs fails to file an amended complaint consistent with this order by September 2, 2011, the Court will

7

(5:11 CV 927)

dismiss the case for want of prosecution.

B.     <u>The First Amended Complaint</u>

On September 2, 2011, counsel for the plaintiffs filed an amended complaint.  The

defendants in the amended complaint were listed as the City of Akron, and Akron police officers

Jason Belocic, Michael Miles, Sergeant Agostina Micozzi, Sergeant Willard Congrove and

Sergeant David Long (collectively Officers).  Each of the Officers were sued in their individual

and official capacity.  There are two paragraphs numbered "6" in the amended complaint.  The

second numbered paragraph six alleges the date on which the events at issue occurred:

> Plaintiffs state that on or about May 11, 2009, defendant
> officers had instructed, Marvin Smith, to forcibly kick open
> the front door of plaintiff "Gamblin's" home known as 364
> Noah Avenue, Akron, Ohio.

The defendants moved for summary judgment on plaintiffs' first amended complaint.

The Court conducted a hearing on defendants' motion for summary judgment on June 24, 2013.

The Court requested and received from the court reporter an unofficial transcript of the hearing.

Page 20 of that transcript reflects the following colloquy between Court and counsel:

> THE COURT:          Do you believe you have a constitutional
> violation on the part of the police in allowing Smith to kick in the
> door?
>
> MR. REECE:          No, Your Honor, that is not --
>
> THE COURT:          No, I'm asking counsel for the plaintiff.
>
> MR. REECE:          Oh, I'm sorry.
>
> MR. MADISON:          I do, Your Honor.
>
> THE COURT:          Then have you pled that?

8

(5:11 CV 927)

     MR. MADISON:  Well, not specifically, but it can't be parsed
     from the behavior:

     THE COURT:  Well, I'm going to give you three weeks to
     file an amended complaint and add that claim.

     MR. MADISON:  I will do that.

C.  <u>The Second Amended Complaint</u>

   The second amended complaint was filed on July 21, 2013 and lists the same defendants

as the first amended complaint. In their second amended complaint, plaintiffs allege that

defendant Officers violated plaintiffs' constitutional rights under the Fourth and Fourteenth

Amendments to be free from unreasonable search and seizure and to be free from excessive and

unreasonable force.

   The second amended complaint contains five counts. Count 1: 42 U.S.C. § 1983 against

city of Akron and defendant officers for violation of Gamblin's and Hairston's constitutional

rights. Count 2: Assault and Battery of Gamblin and Hairston against individual officers. Count

3: 42 U.S.C. § 1983 *Monell* claim against the City of Akron. Count 4: Ohio Revised Code §

2315.21 claim for punitive damages by Gamblin and Hairston against defendant officers. Count

5: Attorney fees pursuant to 42 U.S.C. § 1988.

   After the second amended complaint was filed, defendants filed another motion for

summary judgment.

III. DEFENDANTS' MOTION SUMMARY JUDGMENT

   Defendants move for summary judgment on the second amended complaint on multiple

grounds.

9

(5:11 CV 927)

First, defendant Officers claim they are entitled to judgment as a matter of law because the second amended complaint does not relate back to the filing of the original complaint, and the statute of limitations under 42 U.S.C. § 1983 and state law has expired.

Second, defendant officers claim that they are entitled to qualified immunity from liability under 42 U.S.C. § 1983.

Third, defendant Sergeant Congrove is entitled to summary judgment on plaintiffs' 42 U.S.C. § 1983 cause of action because he arrived on the scene after the incidents at issue and performed a supervisor's investigation.

Fourth, defendant Sergeant Long is entitled to summary judgment on plaintiffs' 42 U.S.C. § 1983 cause of action because he arrived on the scene after the incidents at issue and had no participation in those events.

Fifth, defendant City of Akron is entitled to summary judgment on plaintiffs' 42 U.S.C. § 1983 *Monell* claim because plaintiffs cannot establish a question of fact of underlying constitutional violations, and even if there were underlying constitutional violations, cannot establish that the City of Akron has a custom or policy behind any such violation.

Sixth, defendant officers are entitled to summary judgment on plaintiffs' state law tort claim because Ohio Revised Code § 2744.03(A)(6) provides immunity from suit to political subdivision employees except when they act with malicious purpose, in bad faith, or in a wanton or reckless manner.  Further, defendant officers contend that they are entitled to judgment as a matter of law because a police officer may be held liable for assault and battery only if he used "unreasonable force" and plaintiffs cannot demonstrate that defendant officers' conduct was

10

(5:11 CV 927)

objectively unreasonable.

Next, defendant officers contend that they are entitled to judgment as a matter of law on plaintiffs' punitive damages claim because there is no evidence to prove a question of fact that defendants' conduct was motivated by evil intent or that defendants acted with reckless or callous indifference to the federally protected rights of others.

Lastly, defendants argue that because plaintiffs' claim for attorney fees pursuant to 42 U.S.C. § 1988 is derivative to their 42 U.S.C. § 1983 claim, plaintiffs' attorney fee claim must fail as a matter of law.

IV.  LAW AND ANALYSIS

A.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, discovery and disclosures on the record, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *EJS Properties, LLC v. City of Toledo,* 698 F.3d 845, 855 (6th Cir. 2012); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find in favor of the non-moving party.  In reviewing a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

(5:11 CV 927)

B.        Statute of Limitations

42 U.S.C. § 1983 does not provide for a statute of limitations.  Instead, the United States Supreme Court has held that "§ 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought."  *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)).  The Sixth Circuit has held that a two-year statute of limitations applies to § 1983 claims in Ohio.  *Cooey v. Strickland*, 479 F.3d at 416 (citing *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)).  The statute of limitations begins to run when the plaintiff knows, or has reason to know, that the act providing the basis for her injury has occurred.  *Cooey v. Strickland*, 479 F.3d at 416.

In this case, plaintiffs' cause of action accrued on May 11, 2009.  The original complaint was filed on May 10, 2011—the eve of the expiration of the two-year statute of limitations for § 1983 actions in Ohio.

In the original complaint, plaintiffs identified three John Doe Akron police officers.  The first amended complaint, filed on September 2, 2011, named defendants Officer Belocic, Officer Miles, Sergeant Micozzi, Sergeant Congrove, and Sergeant Long.

The first amended complaint was filed less than 120 days after the original complaint, but after the expiration of the two-year statute of limitations for § 1983 actions in Ohio.  The second amended complaint also names defendants Officer Belocic, Officer Miles, Sergeant Micozzi, Sergeant Congrove, and Sergeant Long.  Defendants Belacic, Miles, Micozzi, Congrove and

12

(5:11 CV 927)

Long contend that they are entitled to judgment as a matter of law because plaintiffs' claims

against them were filed outside the statute of limitations.

The relevant portion of Rule 15(c) applicable to this case provides as follows:

(c)  Relation Back of Amendments.

> (1)  When an Amendment Relates Back.  An amendment to a pleading relates
> back to the date of the original pleading when:
> . . . .
>> (C)  the amendment changes the party or the naming of the party against
>> whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the
>> period provided by Rule 4(m) for serving the summons and complaint, the
>> party to be brought in by the amendment:
>>
>>> (i)  received such notice of the action that it will not be prejudiced
>>> in defending on the merits; and
>>>
>>> (ii) knew or should have know that the action would have been
>>> brought against it, but for a mistake concerning the proper party's
>>> identity.

Defendants' motion for summary judgment contends that plaintiffs' second amended

complaint does not relate back to the original complaint for the purpose of filing against

defendant officers within the statute of limitations.  As discussed in the procedural background,

the original complaint named John Doe officers, but the first amended complaint and second

amended complaint both name the same defendant officers and sergeants presently before the

Court on summary judgment.  The real analysis, for purposes of defendant officers and sergeants

motion for judgment on the grounds that the case against them was filed outside the statute of

limitations, focuses on whether the first amended complaint - where defendant officers and

sergeants were first named by plaintiffs - relates back to the filing date of the original pleading.

If the first amended complaint relates back, so does the second amended complaint.

13

(5:11 CV 927)

The first amended complaint was filed within the period for service provided by Rule 4(m) and asserts claims arising out of the same conduct, transaction or occurrence of the original complaint.  In addition to satisfying these two elements, in order to relate back to the date of the original pleading, Rule 15(c) requires that the party brought in by the amended pleading receive such notice so as to avoid prejudice, *and* that the party brought in knew or should have known that action would have been brought against him but for a <u>mistake</u> concerning the proper party's identity.

In the Sixth Circuit, lack of knowledge about the identity of a defendant does not constitute a "mistake" for purposes of application of the relation back provision of Rule 15(c).  *Brown v. Cuyahoga County, Ohio*, 517 Fed.Appx. 431, 433-34 (6th Cir. 2013) (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)).  In both *Brown* and *Smith v. City of Akron*,[3] plaintiff identified John Doe defendants in the original complaint filed before the § 1983 statute of limitations ran.  After the statute of limitations had expired, plaintiff filed an amended complaint which named specific police officers and jail employees.  In both cases, the Sixth Circuit held that the police officers and jail employees were entitled to dismissal because the case against them in amended pleading was filed after the expiration of the statute of limitations.  The addition of "new, previously unknown defendants in place of 'John Doe' defendants 'is considered a change in parties, not a mere substitution of parties,' and 'such amendments do not satisfy the mistaken identity requirement of Rule 15(c).'"  *Smith v. City of Akron*, 476 Fed.Appx. at 69 (quoting *Cox v. Treadway*, 75 F.3d at 240).

---

[3] 476 Fed.Appx. 67 (6th Cir. 2012).

14

(5:11 CV 927)

In this case, the Court finds that plaintiffs' amended complaint against defendants Officer Belocic, Officer Miles, Sergeant Micozzi, Sergeant Congrove, and Sergeant Long was filed after the expiration of the two-year limitations period for § 1983 actions in Ohio, and does not relate back to the filing date of the original complaint.  Accordingly, the Court concludes that Officer Belocic, Officer Miles, Sergeant Micozzi, Sergeant Congrove, and Sergeant Long are entitled to dismissal of the claims against them as a matter of law.

C.    Municipal liability - § 1983 Claim

Having determined that plaintiffs' first amended complaint does not relate back to the date of the original complaint with respect to defendants Belocic, Miles, Micozzi, Congrove and Long, plaintiffs remaining substantive federal claim is their *Monell* claim against the City of Akron.  With respect to the *Monell* claim, plaintiffs allege in their second amended complaint that:

> 28.    Prior to May 11, 2009, the City developed and maintained policies or customs exhibiting deliberated [sic] indifference to the constitutional rights of persons in City which caused the violation of Gamblin's and Hairston's rights.
>
> 29.    It was the policy and/or custom of the City to inadequately and improperly investigates [sic] citizen complaints of police misconduct, and the City instead tolerated acts of misconduct.
>
> 30.    It was the policy and/or custom of the City to inadequately supervise and train its police officers, including Defendant Officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.  The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.
>
> 31.    As a result of the above-described policies and custom, police officers of the City, including Defendant Officers believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

(5:11 CV 927)

      32.    The above-described policies and custom demonstrated a deliberate indifference on the part of the policy makers of the of the City to the constitutional right of persons within the City, and were the cause of the violations of Plaintiffs Gamblin's and Hairston's rights herein.

Under *Monell*, a local government can be sued directly for the unconstitutional actions of its employees when those actions occurred because of a municipal policy or custom. *Burgess v. Fischer*, --F.3d--. 2013 WL 5873323 (6th Cir.) (citing *Monell v. Dep't of Soc. Srvs.*, 436 U.S. 658, 694 (1978)).  There must be a "causal link" between the City of Akron's policy or custom and the violation of plaintiffs' constitutional rights. *Cummings v. City of Akron*, 418 F.3d 676, 684-85 (6th Cir. 2005).  Plaintiffs can establish an illegal policy or custom by demonstrating one of following: 1) existence of illegal official policy or legislative enactment; 2) an official with final decision making authority ratified the illegal actions; 3) existence of a policy of inadequate training; and 4) existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, --F.3d--. 2013 WL 5873323 at * 9 (6th Cir.) (citing *Thomas v. City of Chatanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  Therefore, the first step in the *Monell* analysis is whether the defendant Officers conduct was unconstitutional.[4]

The Fourth Amendment prohibits unreasonable seizures and excessive force against free citizens, such as Gamblin and Hairston.  The constitutional right to be free from unreasonable

---

[4] The Court has determined that Belacic, Miles, Micozzi, Long and Congrove are entitled to judgment as a matter of law because the first amended complaint and second amended complaint do not relate back to the filing of the original complaint.  As a consequence, it was not necessary for the Court to engage in an analysis on the merits of plaintiffs' § 1983 claims against the Officers.  However, an analysis of those claims is relevant to the Court's consideration of plaintiffs' *Monell* claim.  Therefore, the Court will briefly address these issues for the purpose of its *Monell* analysis.

16

(5:11 CV 927)

search and seizure and excessive force under the Fourth Amendment is a clearly established right known to a reasonable police officer. Therefore, the question of whether a constitutional violation occurred in this case depends upon whether the defendant Officers' conduct was reasonable.

     1.     Forcible entry without a warrant

In order to establish a constitutional violation against defendant Officers, plaintiffs must demonstrate that a person acting under color of state law violated their constitutional rights. Marvin Smith is not a defendant in this case. However, plaintiffs' claims of constitutional injury begin with the allegation that Smith's forced entry of Gamblin's home is attributable to defendant officers.

On summary judgment, defendants argue that Smith forcibly entered Gamblin's home "without the aid or assistance of the Officers on the scene." The Fourth Amendment only protects against unreasonable intrusions by the police, and defendants contend that plaintiffs are unable to show how Sergeant Micozzi's "advice and counseling" to Smith regarding Smith's "lawful" right to enter Gamblin's home is a constitutional violation. In support defendants cite *Brentwood Academy v. Tenn. Secondary Sch. Ath. Ass'n*[5] for the determining whether Smith's conduct may be "fairly attributable" to the state.

In the *Brentwood Academy* case, the Supreme Court discussed four tests for determining whether conduct challenged under § 1983 is attributable to the state. Those four tests are as follows: 1) public function; 2) state compulsion; 3) symbiotic relationship or nexus; and

---

[5] 531 U.S. 388 (2001).

(5:11 CV 927)

environment.  *Brentwood Acd. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. at 296 ("Our cases

have identified a host of facts that can bear on the fairness of such an attribution.  We have, for

example, held that a challenged activity may be a state action when . . . the State provides

'significant encouragement, either overt or covert . . .' [*Blum v. Yaretsky*, 457 U.S. 991, 1004

(1982)].").

 "The existence of state action is a 'necessarily fact-bound inquiry.'"  *Hensley v.*

*Gassman*, 693 F.3d 681, 689 (6th Cir. 2012).  The mere presence of a police officer, without

more, is insufficient to convert the conduct of a third party into state action.  *Hensley v.*

*Gassman*, 693 F.3d at 689.  However, an officer's presence may constitute state action if the

officer engages in conduct which cannot be characterized as a neutral presence.  *Hensley v.*

*Gassman*, 693 F.3d at 689.  Conduct which crosses the line from a neutral presence to significant

encouragement includes advice given by a police officer to a third party regarding the third

party's right to engage in the act at issue.  *Hensley v. Gassman*, 693 F.3d at 689 ( "Lieutenant

George did not remain neutral, but advised Latshaw that she had a right to immediate possession

of the van . . ."  (quoting *Abbott v. Latshaw*, 164 F.3d 141, 147 (3d Cir. 1998)).

 In this case, by his own admission, Sergeant Micozzi "advised Smith of his lawful right

to force entry into his residence[,]" and advised Smith that Micozzi, Miles and Belacic "would

stand by if [Smith] chose to [force entry into the home]."  Micozzi Aff. (ECF 53-1) par. 8 and

(ECF 51-5) par. 9.  Further, according to the transcript of Sergeant Congrove's interview of

Smith regarding the events of May 11, 2009, the officers advised Smith to "keep kicking" the

18

(5:11 CV 927)

door.[6]

By so advising Smith, Micozzi, Miles and Belacic did not remain neutral.  Their

involvement in Smith's forced entry into Gamblin's home constitutes a sufficient basis upon

which a reasonable trier of fact could find that the forcible entry of Gamblin's home is

attributable to Micozzi, Belacic and Miles.

Further, the parties disagree as to the facts surrounding Micozzi's conclusion in the first

instance that Smith had a lawful right to access Gamblin's home and to consent to the officers'

entry.  There is sufficient evidence from which a trier of fact could conclude that it was not

reasonable for Micozzi to decide that Smith had authority over Gamblin's home.

The Court finds that there are genuine issues of fact in dispute with respect to the

defendants' role in the forcible entry of Gamblin's home.  Accordingly, the Court cannot

conclude as a matter of law that defendants did not violate plaintiffs' constitutional rights in

connection with that warrantless entry.

---

[6] "Marvin Smith: They knocked on the door and she was in there, they heard her moving and they wouldn't open the door and they just kept knocking.

Sgt. Congrove: Ok, what happened after that?  Did you go to the side door?

Marvin Smith: Yes.

St. Congrove: What happened then?

Marvin Smith: Then they started knocking and I started kicking it and they said keep kicking it, kick it in."

Congrove Aff. (ECF 51-2) p. 5 of 6.

(5:11 CV 927)

     2.     Excessive Force

Plaintiffs also claim that Officers Micozzi, Miles and Belacic violated their constitutional rights by using excessive force against them.  An excessive force claim is evaluated by determining whether the officers; actions were "objectively reasonable in light of the facts and circumstances confronting them."  *Wells v. City of Dearborn Heights*, --Fed.Appx.--, 2013 WL 4504759 (6th Cir.) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Reasonableness is determined from the perspective of a reasonable officer on the scene.  *Id.*

In this case, there is a fact dispute regarding the particulars of the events which took place in Gamblin's home after the questionable entry.  Gamblin, Hairston, and the officers each have a different version of the facts that are relevant to a determination as to whether the officers use of force against Gamblin and Hairston was reasonable.  Whether the officers acted reasonably depends on whose version of the facts is accepted.

For example, Hairston claims he was still on the stairs when he was tasered and was not involved in the altercation between Gamblin and Belacic and Miles.  The officers' version of events was that Hairston was involved in the altercation between Gamblin and Belacic and Miles.  Hairston was 67 years old at the time.  Where Hairston was, what he was doing, and to what degree he was physically capable of placing defendant officers in harms way, are all genuine issues of fact that are relevant to a determination of whether Micozzi's use of a taser on Hairston was objectively reasonably at the time.

20

(5:11 CV 927)

Similarly, the parties differ in their version of events as to when the knife was no longer in Gamblin's hand, and whether she dropped the knife as directed by the officers or whether it was taken from her.  These disputed facts are relevant to a determination of whether Belacic's and Miles's use of force against Gamblin was objectively reasonable at the time.

Accordingly, the Court cannot conclude as a matter of law that defendants' use of force against Gamblin and Hairston was objectively reasonable because that determination depends on whose version of the facts are accepted by a trier of fact, and there is a sufficient basis in the record upon which a reasonable trier of fact could accept plaintiffs' version of events.  The version of events accepted by a trier of fact also impacts the outcome of whether there was cause to support the institution of criminal charges against Gamblin and Hairston by the officers.

3.      City of Akron's custom and policy

Because there are genuine issues of disputed fact, the Court cannot conclude as a matter of law that the Officers did not violate plaintiffs' constitutional rights.   For the purpose of analyzing whether the City of Akron is entitled to summary judgment on plaintiffs' *Monell* claims, however, the Court will assume that the defendant officers' conduct violated plaintiffs' constitutional rights and that defendant officers are not entitled to qualified immunity.[7]

---

[7]   The question of whether the officers are entitled to qualified immunity is a question of law.  However, summary judgment on that issue is not appropriate when, as in this case, there are fact disputes regarding events upon which the entitlement to qualified immunity turns.  In this case, the determination of whether defendant officers are entitled to qualified immunity depends on which version of the events is accepted by a trier of fact.  *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

(5:11 CV 927)

In their motion for summary judgment on plaintiffs' *Monell* claim, defendants argue that plaintiffs have not identified in their second amended complaint, beyond broad generalizations, any particular City of Akron policy or custom that caused their alleged constitutional violations. Defendants further argue that plaintiffs cannot show that: 1) there is a City of Akron policy or custom to conduct unlawful warrantless entries to ensure safety, to use excessive force, or to institute criminal proceedings without cause; 2) there is a widespread practice of illegal warrantless entries, unreasonable uses of force and unlawful prosecutions that are "so permanent and well-settled" so as to constitute department custom; 3) a City of Akron official with final policy making authority directed or authorized the alleged constitutional violations; 4) the City of Akron failed to train its officers after complaints of illegal warrantless entries, unreasonable use of force or unlawful prosecutions, and ignored the foreseeable consequences of such failure to train; and 5) the investigation of this incident was inadequate or that any flaws in the investigation was representative of a pattern of illegal activity that the Akron Police Department was aware of but remained deliberately indifferent too, all of which was the cause of plaintiffs' alleged constitutional violations.

Defendants contend that the only information in the record that plaintiffs have advanced to support their *Monell* claim are answers to interrogatories to the effect that there was no disciplinary action taken against the officers who violated plaintiffs' constitutional rights.  In response to defendants' motion for summary judgment on plaintiffs' *Monell* claim, plaintiffs advance no other argument or Rule 56 evidence in support of their claim that a City of Akron custom or policy regarding training, or failure to investigate, or any other custom or policy

22

(5:11 CV 927)

resulted in the Officers' alleged violations of plaintiffs' constitutional rights.

Accordingly, the Court concludes that defendants are entitled to judgment as a matter of law with respect to plaintiffs' *Monell* claim against the City of Akron.

D.      Attorney Fees - § 1988 Claim

42 U.S.C. § 1988 provides for attorney fees to prevailing parties in civil rights actions and such fees are entirely dependant on success on those claims.  In this case, the Court has determined that defendants are entitled to judgment as a matter of law on plaintiffs' § 1983 claims.  Accordingly, there is no basis for plaintiffs' § 1988 claims, and defendants are entitled to judgment as a matter of law on Count 5 of plaintiffs' second amended complaint.

E.      Punitive Damages

Count 4 of plaintiffs' second amended complaint claims punitive damages against defendant Officers under "applicable federal and Ohio law."  The Court has concluded that defendants are entitled to judgment as a matter of law on plaintiffs' federal claims.  Therefore, to the extent that plaintiffs' claim for punitive damages is based on plaintiffs' § 1983 claims, defendants are also entitled to judgment as a matter of law.

## V.  CONCLUSION

For the reasons contained herein, defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Defendants' motion as to plaintiffs' federal claims, Counts 1, 3 and 5, is GRANTED.  Defendants' motion for summary judgment as to plaintiffs' claim for punitive damages in Count 4, to the extent plaintiffs' punitive damages claim relates to plaintiffs' § 1983 claims, is GRANTED.

23

(5:11 CV 927)

In the absence of any surviving federal claims, the Court declines to exercise jurisdiction over plaintiffs' remaining state claims.  Accordingly, defendants' motion for summary judgment on plaintiffs' state claim for assault and battery, Count 2, is DENIED as moot, and Count 2 is dismissed without prejudice.

Further, defendants' motion for summary judgment as to plaintiffs' claim for punitive damages in Count 4, to the extent plaintiffs' punitive damages claim relates to plaintiffs' state law claim, is also DENIED as moot.  Count 4, to the extent plaintiffs' punitive damages claim relates to plaintiffs' state law claim for assault and battery, is dismissed without prejudice.

IT IS SO ORDERED.


__November 25, 2013_____                    ___/s/ David D. Dowd, Jr._____
Date                                         David D. Dowd, Jr.
                                             U.S. District Judge

24